IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| UNITED STATES OF AMERICA, | * | |
|---|---|---|
| Plaintiff, | * | |
| v. | * | Case No.   23-20080-JTF |
| JAQUAN L. BRIDGES, | * | |
| Defendant. | * | |

**DEFENDANT'S FIRST MOTION TO DISMISS INDICTMENT**

Defendant Jaquan L. Bridges, through the undersigned, hereby moves to dismiss the indictment in this action alleging that Mr. Bridges was in violation of 18 U.S.C. § 922(o). Mr. Bridges avers that § 922(o) is facially unconstitutional, and as applied, under the Second Amendment requiring the Court to dismiss the indictment with prejudice.

Mr. Bridges brings this motion in light of the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). Under *Bruen*, the government bears the burden of proving that Section 922(g)(1), or anything "distinctly similar" to it, was "part of the historical tradition." *Bruen*, 142 S. Ct. at 2127, 2131.

*I.   Background*

The charges against Mr. Bridges rest on his alleged possession, carrying, and use of a firearm, identified in the indictment as a "machinegun". Mr. Bridges will demonstrate below that the indictment must be dismissed with prejudice because it violates Mr. Bridge's fundamental Secondment Amendment right to keep and bear arms.

  *II.*  *Bruen*

  The Second Amendment provides, "the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. The plain text thus applies to people like Mr. Bridges. After all, the term "people" "unambiguously refers to all members of the political community, not an unspecified subset," *District of Columbia v. Heller*, 554 U.S. 570, 580 (2008), such as so-called "law-abiding" people. "[T]he people" includes "all Americans" and everyone who is "part of [the] national community". *Id*.

  The new standard requires "the government [to] affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 142 S. Ct. at 2127. The government carries a heavy burden to abrogate a constitutional right endowed to all Americans, and as *Bruen*'s rigorous historical analysis demonstrates. *See id*. at 2138-56; *see also United States v. Quiroz*, 2022 WL 4352482, at *4 (W.D. Tex. 2022); *United States v. Range*, 2023 WL 3833404, *3 (3rd Cir. 2023). *Bruen* further instructed that this standard test "requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understand" with the *ultimate focus* on the "public understanding of the right when the Bill of Rights was adopted in 1791." Id. at 2131, 2137 (emphasis added); see also *Stevens v. Mich. State Court Admin. Office*, 2022 WL 3500193, at *6 (citing *Bruen*, 142 S. Ct. at 2130) (To resolve a legal inquiry that requires an analysis of historical items, courts are wholly dependent upon "the principal of party presentation.").

    III.        The Statue underlying Count 1 of the indictment, 18 § U.S.C. 922(o), violates the Second Amendment.

922(o) makes it a crime to "possess" a machinegun. The Supreme Court held in *District of Columbia v. Heller*, 554 U.S. 570 (2008), that the Amendment guarantees an "individual right to possess and carry weapons in case of confrontation." *Id*. at 592. Mr. Bridges was not prohibited from possessing firearms, and there is no basis to exclude him from "the people" whom the Second Amendment protects. Bruen, 142 S. t. 2111, 2134 (2022). Setting aside its restriction of "transfer", 922(o) has the specific function and purpose of criminalizing the possession of an entire category of weapon that self-evidently could prove useful in self-defense "in case of confrontation." *Id*. Unless that category of weapon is excluded from the "Arms" referenced in the Second Amendment, 922(o)- like the ban on handgun possession struck down in Heller- is facially unconstitutional. *See Heller*, 554 U.S. at 635; *see also* Gillian E. Metzger, Facial and As-Applied Challenges Under the Roberts Court, 36 Fordham Urb. L.J. 773, 781-82(2009) (noting "the facial nature of the claim the Court upheld" in Heller).

Machineguns are not excluded from the "Arms" referenced in the Second Amendment. The Amendment "extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Heller*, 554 U.S. at 582. And any argument that they are among the "dangerous and unusual" weapons the Heller Court suggested may not be among the "Arms" referenced in the Second Amendment (id. at 627) would be misguided for two reasons:

        *(1) Machineguns are not "dangerous and unusual" weapons excluded from Second Amendment Protection.*

First, the Supreme Court did not state, in *Heller* or elsewhere, that machineguns are "dangerous and unusual weapons" excluded from the Second Amendment. The Court's discussion of "dangerous and unusual weapons" was dictum in which the Court addressed the hypothetical argument that the weapons "most useful in military service- M-16 rifles and the like- may be banned" under the "dangerous and unusual" exception. *Id*. This was illogical, according to this hypothetical argument, because if possession of such weapons were unprotected, the Second Amendment right would be "completely detached from the prefatory clause" (which refers to the need for a well regulated Militia). *Id*. The Court explained that it was untroubled by this, because the Second Amendment was designed to protect people's right to keep and bear arms- which, in the founding era, were the weapons citizens would have brought with them when reporting for militia duty. *Id*. Machineguns were commonly used in households prior to 1986 and can still be found there[1]. As of May 2021, there were 741, 146 registered machineguns possessed by Americans. Bureau of Alcohol, Tabacco, Firearms and Explosives, Firearms Commerce in the United States: Annual Statistical Update 2012 15-16 (2021). In *Caetano v. Massachusetts*, the Supreme Court found that 200,000 civilians owned stun guns. 136 S. Ct. 1027, 1032-33 (2016). Because stun guns were in wide use, and used as self-defense across the country, they could not be seen as dangerous and unusual weapons excluded from Second Amendment protection. *Id*. at 1033. Other Courts have found a multitude of other weapons, even less common than machineguns, as in common use and not unusual, including nunchakus (Maloney v. Singas, 351 F. Supp. 3d 222, 237-38 (E.D.N.Y. 2018) and tasers (Evitabile v. Beach, 368 F. Supp. 3d 404, 411-12 (N.D.N.Y. 2019).

---

[1] Additionally, machineguns, including the puckle-gun, began to be in use in the early 18th century- however, they became popularized with the invention of the percussion cap and the rise of the gatling gun in the 19th century. https://www.britannica.com/technology/machine-gun

Moreover, the number of machineguns counted by ATF is undercounted- as these are only the machineguns that had been grandfathered in and registered. *See* 18 U.S.C. 922(o)(2)(B); Pub L. No. 99-308, sec. 102 (May 19, 1986). It must therefore be viewed as a significant undercount of the number of machineguns Americans would lawfully possess for self-defense purposes, had Congress not unconstitutionally prohibited them from doing so for the last three decades. As Judge Easterbrook observed in *Friedman v. City of Highland Park*, 784 F.3d 406 (7tth Cir. 2015), "it would be absurd to say that the reason why a particular weapon can be banned is that there is a statute banning it, so that it isn't commonly owned." *Id*. at 409.

Aside from the historical development, *Bruen* also bolsters this train of thought. Justice Thomas rejected the argument that firearms in general should be deemed dangerous and unusual weapons, noting that this designation applies only to weapons that are "highly unusual in society at large" and not to weapons that are "in common use today." *Bruen*, 142 S. Ct. at 2143 (quoting *Heller*, 554 U.S. at 627); *see also Bruen*, 142 S. Ct. at 2143-44 & n.13.

### (2) Mr. Bridges is covered by the Second Amendment

It may be that *Bruen*, as stated above, has fully done away with the dangerous and unusual argument. If it has, faithfully applying the *Bruen* analysis will equate in the dismissal of this case: we ask- is the conduct covered (possession of a firearm) by the Second Amendment- if so, there's a presumption the regulation is unconstitutional, which the government must rebut by demonstrating an historical analogue of disarmament, with particular emphasis on the founding era. *Bruen*, at 2138-56; *see also United States v. Quiroz*, 2022 WL 4352482, at *4 (W.D. Tex. 2022); *United States v. Range*, 2023 WL 3833404, *3 (3rd Cir. 2023).

If *Bruen* has not fully abrogated such an analysis, the aforementioned dangerous and unusual review would be done in the second step of *Bruen*, and the government would need to show an historical disarmament of machineguns, with particular emphasis on the founding era.

Regardless, either train we ride has the same final stop- dismissal with prejudice.

IV.   *The As-Applied Challenge*

The Court may find that 922(o) is not entirely unconstitutional under a *Bruen* analysis due to the transfer clause of 922(o). It may be impermissible to sell, and manufacture arms across state lines if one is not a licensed firearm dealer. If that is the case, the movant would only challenge the constitutionality of 922(o) as applied under the guise of possession.

V.   *Conclusion*

For the reasons stated supra., Mr. Bridges requests that the indictment be dismissed with prejudice for violating his Second Amendment rights.

Respectfully Submitted,

DORIS RANDLE-HOLT
FEDERAL DEFENDER

*s/ Brian Daniel Mounce*
Assistant Federal Defender
200 Jefferson Ave., Suite 200
Memphis, TN 38103
(901) 544-3895

## CERTIFICATE OF SERVICE

    I, Brian Daniel Mounce, certify that on July 19, 2023, a true copy of the foregoing was forwarded to all counsel of record via the Court's electronic filing system.

*s/ Brian Daniel Mounce*
Assistant Federal Defender
