IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Plaintiff, | * | |
| v. | * | Case No. 21-20080-JTF |
| JAQUAN L. BRIDGES, | * | |
| Defendant. | * | |

**REPLY IN SUPPORT OF DEFENDANT'S FIRST MOTION
TO DISMISS INDICTMENT**

Defendant Jaquan L. Bridges, through the undersigned files this Reply to the Government's response in opposition to Defendant's first motion to dismiss.

## Reply

The government makes its first contention to defendant's motion to dismiss by wheeling out *United States v. Miller*, 307 U.S. 174 (1939). The problem with *Miller* is that it relies and reads the Second Amendment as a collective right based upon the militia clause, rather than the individualized right that the Supreme Court has since interpreted as the correct understanding. *See District of Columbia v. Heller*, 554 U.S. 570, 579, 581, 582, 593 ("[A]ll of which favor viewing the right to keep Arms as an individual right unconnected with militia service . . . . It was clearly an individual right, having nothing whatever to do with service in a militia"); *see also Range v. Attorney General United States of America*, 69 F.4th 96, 100 (3rd Cir. 2023); *New York State Rifle & Pistol Assc., inc. v. Bruen*, 142 S.Ct. 2111, 2127 (2022). The relevant question is whether the conduct is covered by the Second Amendment (keeping and bearing arms), and, if so, is there a historical tradition of disarming that conduct.

By jumping to the common use section, as promulgated in *Heller*, we look at the historical tradition, i.e. the second step of the *Bruen* analysis. "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 142 S. Ct. at 2129-30; *United States v. Rahimi*, 61 F.4th 443, 450 (5tth Cir. 2023). "The Government bears the burden of 'justifying its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. *Rahimi*, 61 F.4th at 450 (quoting *Bruen* at 2130). "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Range*, 69 F.4th 100 (quoting *Bruen,* 142 S. Ct. at 2127;(quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36 (1961)).

The government has failed to bear that burden. That historical analysis is not what the government would proffer by pointing to *State v. Langford,* 10 N.C. 381 (NC 1825). First, one case, is simply insufficient to report an historical tradition. *Bruen* goes so far to say "we doubt that three colonial regulations could suffice to show a tradition of public-carry regulation." *Bruen,* 142 S. Ct at 2142. There, in fact, the Court deemed insufficient three actual codified pieces of legislation on public carry laws. <u>Id.</u> Second, *State v. Langford* does not discuss the concept of illegally owning firearms, but rather that one may be charged with breaching the peace by trespassing with arms (*vi et armis*) onto another's property in a fashion to frighten an individual or damage property. Just as in *Bruen*, *Langford* denotesthere certainly may be firearm restrictions, similar to the First Amendment's time, place, and manner limitations (i.e.firearms may be prohibited in schools and churches), and there's a longstanding tradition of doing so. It does not, however, address "this Nation's historical tradition" of transferring or possessing machine guns.

The defense is uncertain of the government's argument as to why machine guns owned prior to 1986 are not dangerous and unusual weapons, yet those owned afterwards are. Again, more that 740,000 Americans enjoy the ownership of machine guns today. *See* Bureau of Alcohol, Tabacco, Firearms and Explosives, *Firearms Commerce in the United States: Annual Statistical Update* 2012 15-16 (2021)). The Supreme Court already found other weapons, that were owned in much smaller numbers, within normal use. *See Caetano v. Massachusetts,* 136 S.Ct. 1027 (2016)*; Maloney v. Singas*, 351 F. Supp. 3d 222, 237-38 (E.D.N.Y. 2018); *Evitabile v. Beach*, 368 F. Supp. 3d 404, 411-12 (N.D.N.Y. 2019).

The defense sees no longstanding tradition of regulation as required under *Bruen*. Moreover, all the cases that the government cites are pre-*Bruen* cases. For instance, *Hamblen v. United States*, 591 F.3d 471 (6th Cir. 2009), relies on the same dicta, the 'law abiding citizen' notion that is not mentioned in Justice Thomas' opinion in *Bruen*, and rebuffed by the circuit courts as clear dicta. *Range*, at 101; *Rahimi*, at 452; *Kanter v. Barr*, 919 F.3d 437, 453 (7th Cir. 2019) (J. Barrett dissenting).

In sum, a law-abiding restriction is a nebulous term. "The Government surely doesn't believe that someone ticketed for speeding—thus, not abiding by the law—should lose their Second Amendment rights." *United States v. Hicks*, 2023 WL 164170, at *4 (W.D. Tex. 2023) (explaining the absurd consequences that result from defining "the people" as law-abiding, responsible citizens). The government has pointed to no longstanding historical tradition of disarmament that is similar here, nor has it met the burden as proscribed under *Bruen*.  As such, the defense respectfully requests its motion to dismiss with prejudice be granted.

                 Respectfully Submitted,

DORIS RANDLE-HOLT
FEDERAL DEFENDER

*s/ Brian Daniel Mounce*
Assistant Federal Defender
200 Jefferson Ave., Suite 200
Memphis, TN 38103
(901) 544-3895

## CERTIFICATE OF SERVICE

I, Brian Daniel Mounce, certify that on August 3, 2023, a true copy of the foregoing was forwarded to all counsel of record via the Court's electronic filing system.

*s/ Brian Daniel Mounce*
Assistant Federal Defender