#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE WESTERN DISTRICT OF TENNESSEE
#### WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Case No. 2:23-cr-20080-JTF-1 |
| vs. ) | |
| ) | |
| **JAQUAN BRIDGES,** ) | |
| ) | |
| **Defendant.** ) | |

### ORDER DENYING MOTION TO DISMISS INDICTMENT

Before the Court is Defendant Jaquan Bridges' Motion to Dismiss the Indictment, filed on July 19, 2023. (ECF No. 24.) The Government filed a Response on August 1, 2023. (ECF No. 25.) Bridges filed a Reply on August 3, 2023. (ECF No. 26.) For the following reasons, Bridges' Motion is **DENIED**.

### I.   BACKGROUND

On April 27, 2023, a federal grand jury indicted Bridges for unlawful possession of a machinegun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2). (ECF No. 1.) The Government alleges that on or about February 1, 2022, Bridges knowingly possessed a Glock .40 caliber pistol with an attached conversion device that converted into a machinegun. (*Id.*) Bridges filed the instant Motion challenging the validity of the machinegun ban imposed under § 922(o) as unconstitutional facially and as-applied to him, relying on *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). (ECF No. 24, 1.)

## II.  LEGAL STANDARD

Motions to dismiss indictments are governed by Rule 12 of the Federal Rules of Criminal Procedure, which states that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b). Federal Rule of Criminal Procedure 12(b)(3)(B) allows a defendant to challenge the sufficiency of an indictment.

A statute is facially unconstitutional when it is "unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008). A facial challenge requires the defendant to show that no set of circumstances exist to validly apply the statute. *Green Party of Tenn. v. Hargett*, 791 F.3d 684, 691 (6th Cir. 2015). An as-applied challenge alleges the statute in question is unconstitutional as in its application to the party before the court. *United States v. Abdulmutallab*, 739 F.3d 891, 905 (6th Cir. 2014).

## III.  ANALYSIS

The Second Amendment provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. However, Congress enacted the Gun Control Act of 1968 ("GCA"), Pub. L. No. 90-618, § 101, 82 Stat. 1213–14, "to provide support to Federal, State, and local law enforcement officials in their fight against crime and violence" and imposed certain firearm restrictions necessary to achieve that purpose. Thereafter, Congress enacted § 922(o) as part of the Firearm Owner's Protection Act of 1986, which amended the GCA "to strengthen the Gun Control Act of 1968 to enhance the ability of law enforcement to fight violent crime and narcotics trafficking." *United States v. Beuckelaere*, 91 F.3d 781, 784 (6th Cir. 1996) (quoting H.R. Rep. No. 495, 99th Cong., 2d Sess. 1 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1327, 1327). As such, it is "unlawful for any person to transfer or possess a machinegun." 18 U.S.C. § 922(o).

Bridges moves to dismiss the indictment, arguing that criminalizing the possession of machineguns is unconstitutional because such weapons are not excluded from the "Arms" referenced in the Second Amendment. (ECF No. 24, 3.) The Government argues that the Supreme Court has declared that machinegun regulation falls outside the scope of the Second Amendment. (ECF No. 25.) To determine whether § 922(o) is unconstitutional facially or as-applied to Bridges in violation of the Second Amendment, the Court first considers the scope of the Second Amendment.

    *A.    The Second Amendment.*

Supreme Court decisions have clarified the Second Amendment right relative to whom it was designed to protect and the types of weapons it covers. In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court considered a Second Amendment challenge to a District of Columbia law that banned all handgun possession in residences and required any lawful firearm in the home to be either disassembled or bound by a trigger lock, rendering the firearm inoperable. 554 U.S. at 628. *Heller* also considered whether the Second Amendment guaranteed the right to keep and bear arms for self-defense, as opposed to only providing a collective right to maintain a militia. *Id*. at 577. The Supreme Court examined the text and history of the Second Amendment and concluded that it does in fact guarantee an individual the right to keep and bear arms for self-defense; and that right is unconnected to militia service. *See generally id*. at 576–622. In reaching its decision, the Supreme Court indicated that the right "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id*. at 635.

Ultimately, the Court held that the prohibition violated the Second Amendment, and that the petitioner was entitled to possess, register, and obtain a license to carry his handgun in his home, provided he "was not disqualified from the exercise of Second Amendment rights." *Id*. The

3

Court reminded us that Second Amendment rights are not unlimited. *Id*. at 626. *Heller* explained that the type of weapons protected by the Second Amendment "were those 'in common use at the time' …... We think that limitation is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Id*. at 626–27 (citing *United States v. Miller*, 307 U.S. 174, 178 (1939)). The Court also indicated that it would be "startling" to accept an interpretation of precedent that suggests restricting the possession of machineguns, set forth in the National Firearms Act, is unconstitutional. *Hamblen v. United States*, 591 F.3d 471, 474 (6th Cir. 2009) (citing *Heller,* 554 U.S. at 624).

Two years after *Heller*, the Supreme Court considered whether the Second Amendment applies to the states in *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 767 (2010). There, petitioners sought to have certain Chicago laws and related ordinances that banned almost all private citizens from handgun possession, including in their homes, declared unconstitutional. *Id*. at 750. Turning to text and history again to decide the question, *McDonald* declared that the Second Amendment applies to the states under the Due Process Clause of the Fourteenth Amendment. *Id*. at 767–78, 791.

Recently, *Bruen* expanded the scope of the Second Amendment by declaring that it protects the right to possess firearms outside the home for self-defense. *Bruen*, 597 U.S. at 10. *Bruen* considered a New York licensing scheme that required law-abiding citizens to show a special need to carry a firearm in public for self-defense. *Id*. at 11, 71. To determine whether the law ran afoul of the Second Amendment, the Supreme Court first declined to adopt a two-step test developed by the Courts of Appeals for analyzing Second Amendment challenges and then clarified the proper test that should be used. *Id*. at 17. The first step of the two-part test allowed the Government to "justify its regulation by 'establish[ing] that the challenged law regulate[d] activity falling outside the scope of the right as originally understood.'" *Id*. at 18 (citations omitted). Courts then

ascertained the original scope of the Second Amendment informed by history. *Id*. If the Government could show that the regulated conduct fell outside the scope of the Second Amendment, then that conduct was not protected, and the prosecution could proceed. *Id*. However, if historical evidence was inconclusive or suggested that the activity was protected by the Second Amendment, then the analysis proceeded to step two.

Step two analyzed "how close the law [came] to the core of the Second Amendment right and the severity of the law's burden on that right." *Id*. At this stage, courts applied strict scrutiny if the law burdened a "core" Second Amendment right to determine whether the law was "narrowly tailored to achieve a compelling governmental interest." *Id*. at 18–19. Otherwise, courts applied intermediate scrutiny and analyzed whether the government could show that the regulation was "substantially related to the achievement of an important governmental interest." *Id*. at 19.

The Supreme Court struck down this approach. While the first step was broadly consistent with *Heller* as it "demand[ed] a test rooted in the Second Amendment's text, as informed by history," the so-called means-end scrutiny application that required courts to analyze "how close [a] law comes to the core of the Second Amendment right and the severity of the law's burden on that right" did not comport with *Heller* and *McDonald*. *Id*. at 18–19. Abrogating the means-end scrutiny application in the Second Amendment context, *Bruen* reiterated the text and history inquiry for determining the constitutionality of a firearm regulation as set out in *Heller*:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id*. at 17. In other words, a court's task is to first ask whether the plain text of the Second Amendment covers the conduct involved, and if it does, a court should then determine whether the

5

government satisfies its burden to show that a firearm regulation is consistent with the Nation's historic tradition of firearm regulation. *Id*.; *see also Oakland Tactical Supply, LLC v. Howell Twp., Michigan*, No. 21-1244, 2022 WL 3137711, at *2 (6th Cir. Aug. 5, 2022).

Applying this framework, the *Bruen* Court turned to the Second Amendment's text and history to determine whether the New York licensing scheme was unconstitutional. *See generally Bruen*, 597 U.S. at 31–60. *Bruen* declared New York's proper-cause requirement unconstitutional because it "prevent[ed] law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Id*. at 71.

Prior to *Bruen* and guided by *Heller*, the Sixth Circuit upheld the constitutionality of § 922(o) in *Hamblen v. United States*, 591 F.3d 471 (6th Cir. 2009.) There, the defendant filed a 28 U.S.C. § 2255 petition challenging his § 922(o) conviction as unconstitutional. *Id*. at 472. The Bureau of Alcohol, Tobacco, Firearms and Explosives investigated the defendant after receiving information that he illegally possessed machineguns. *Id*. at 473. When confronted, the defendant admitted to possessing the firearms. *Id*. He was convicted at trial and, as noted, challenged his § 922(o) conviction as unconstitutional. *Id*. The Sixth Circuit determined that the Supreme Court foreclosed the defendant's challenge in *Heller* where it instructed that "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes." *Id*. at 474 (quoting *Heller*, 554 U.S. at 625.) Concluding that the Second Amendment does not confer the right to possess machineguns, the Sixth Circuit denied post-conviction relief. *Id*. at 472, 474.

### B. *Whether the plain text of the Second Amendment covers and protects machineguns.*

Bridges first points the Court to the plain text of the Second Amendment suggesting that the Court's analysis must first begin with examining the plain text of the Second Amendment to

6

determine whether his right to possess a machinegun is protected. (ECF No. 24, 2.) In support of his plain text argument, Bridges argues that under *Bruen*, "[m]achineguns are not excluded from the 'Arms' referenced in the Second Amendment" for three reasons. (*Id*. at 3.) First, because he was not prohibited from possessing firearms, he cannot be excluded from "the people" the Second Amendment protects. (*Id*.) Second, *Heller* did not state that machineguns are "dangerous and unusual" weapons and that any discussion of dangerous and unusual weapons was dictum. (*Id*. at 4.) Third, because the first step of the *Bruen* analysis only considers whether the conduct of possession is covered, the Second Amendment presumptively covers his right of possession triggering the Government's burden to justify the regulation. (*Id*. at 5.) By way of comparison, Bridges further contends that stun guns and other weapons such as nunchakus and tasers have been found to be in common use and not unusual, likening them to machineguns. (*Id*. at 4.)

The Government argues that the Supreme Court has made clear that possession of a machinegun is not protected under the Second Amendment because machineguns were not in common use for lawful purposes when the Second Amendment was passed. (ECF No. 25, 1–2.) The Government further argues that "nothing in § 922(o) prohibits non-prohibited persons from possessing lawful handguns—those not prohibited by the National Firearms Act—for lawful purposes." (*Id*. at 3.) Therefore, the Government submits that Bridges' arguments lack merit because the plain text of the Second Amendment does not cover machineguns. (*Id*. at 4.)

In his Reply, Bridges reiterates that the plain text of the Second Amendment conferring the right to keep and bear arms encompasses the right to possess a machinegun. (ECF No. 26, 1.) Thus, according to Bridges, the first step of the *Bruen* analysis is satisfied. And the Government must justify the regulation. (*Id*. at 2.)

In considering a prosecution under § 922(o), Bridge's position that the Court must first consider the plain text of the Second Amendment, as well as his contention that *Heller*'s discussion

7

of "dangerous and unusual weapons" amounts to dictum that should not be followed are unpersuasive and meritless. The language that this Court relies upon clearly shows that possession of machineguns is not protected by the Second Amendment. And as for the argument that *Heller* only provides dictum, "[l]ower courts are obligated to follow Supreme Court dicta, particularly where there is no substantial reason for disregarding it, such as age or subsequent statements undermining its rationale." *Holt v. City of Battle Creek*, 925 F.3d 905, 910 (6th Cir. 2019) (quoting, *In re Baker*, 791 F.3d 677, 682 (6th Cir. 2015)). Lowers courts "must give on-point Supreme Court *dictum* substantial weight," and are bound by their higher courts' holdings and "their mode of analysis." *United States v. Fields*, 53 F.4th 1027, 1048 n.13 (6th Cir. 2022) (quoting *Troy v. Samson Mfg. Corp.*, 758 F.3d 1322, 1326 (Fed. Cir. 2014)). Last, as to Bridges' contention that weapons such as stun guns, nunchakus, and tasers have not been found to be "dangerous and unusual," but have been found to be in common use and not unusual, reliance on such authority and argument is unpersuasive as it conflicts with Sixth Circuit authority holding that possession of machineguns are not protected by the Second Amendment.[1] *Hamblen*, 591 F.3d at 472, 474. Thus, all of Bridges' arguments are foreclosed by *Heller* and *Hamblen*. The Second Amendment does not confer the right to possess machineguns; and § 922(o) is not unconstitutional.

    **C.**    ***Section 922(o) is facially constitutional.***

As noted above, Bridges contends that the plain text of the Second Amendment places the burden on the Government to show that possessing a machinegun is consistent with the Nation's historic tradition of firearm regulation. (ECF No. 24, 5.) The Court disagrees. *Bruen* reaffirmed *Heller's* text and history approach leaving prior Sixth Circuit precedent interpreting *Heller*

---

[1] The Court understands how arguments can be advanced by way of analogy and comparison. However, in the Second Amendment context and analysis, it is difficult for this Court to fathom how Bridges can argue that stun guns and nunchakus can in any way be compared or likened to machineguns.

undisturbed, to the extent that those decisions did not rely on a means-end scrutiny approach in the Second Amendment context. In light of *Hamblen*, the Court finds that Bridges' § 922(o) Second Amendment challenge is foreclosed. Accordingly, because machineguns are not protected by the Second Amendment, the plain text of the Second Amendment does not cover the conduct at issue. Therefore, the machinegun ban imposed under § 922(o) is facially constitutional.

### D.     *Section 922(o) as-applied to Bridges.*

Finally, without citing authority or advancing arguments, Bridges asserts an as-applied challenge by simply stating that he only challenges the constitutionality of § 922(o) "as-applied under the guise of possession." (ECF No. 24, 6.) An as-applied challenge implies the possibility that a ban could be unconstitutional. *Tyler v. Hillsdale Cnty. Sheriff's Dep't*, 837 F.3d 678, 686 (6th Cir. 2016) (en banc). However, having failed to develop his argument through meaningful analysis as to how § 922(o) is unconstitutional as-applied to him, it is **DENIED**.

### CONCLUSION

Based on the foregoing, this Court finds that § 922(o) is constitutional and does not violate the Second Amendment. **IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that the Motion is **DENIED**.

**IT IS SO ORDERED** this 6th day of February, 2024.

*s/John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE